[S. F. No. 18310. In Bank. Aug. 28, 1951.]

SOL M. STOUMEN, Appellant, v. GEORGE R. REILLY et al., Respondents.

714

Morris Lowenthal for Appellant.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Respondents.

GIBSON, C. J.—The State Board of Equalization suspended, for an indefinite period, plaintiff's general on-sale license to sell alcoholic beverages at the Black Cat Restaurant,

and this appeal is taken from a judgment denying a writ of mandate to compel the board to annul its order and reinstate the license.

The accusation filed against plaintiff was in two counts and alleged violations of sections 58 and 61(a) of the Alcoholic Beverage Control Act.* (2 Deering's Gen. Laws, 1944, Act 3796.) Count one charged that plaintiff permitted his premises to be used as a disorderly house for purposes injurious to public morals. Count two charged that one of plaintiff's employees sold beer to a person under the age of 21 years.

The hearing officer of the board, who received the evidence, found that plaintiff "kept and permitted his licensed premises to be used as a disorderly house in that . . . persons of known homosexual tendencies patronized said premises and used said premises as a meeting place," and that beer was sold to a minor as alleged. He concluded that plaintiff had violated sections 58 and 61(a) and recommended "indefinite suspension" of the license. The findings and recommendation were adopted by the board as its decision. Thereafter the superior court denied a writ of mandate after reviewing the matter on the record before the board. (See *Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131 [173 P.2d 545].)

The principal question with respect to count one is whether the evidence is sufficient to warrant suspension of plaintiff's license. Several police officers testified that many of the patrons of the Black Cat were homosexuals and that it was reputed to be a "hangout" for such persons. A number of people were arrested there, some for vagrancy and some because they "demonstrated homosexual actions," but there was no showing that any of those arrested were convicted. There was no evidence of any illegal or immoral conduct on the premises or that the patrons resorted to the restaurant for purposes injurious to public morals.

---

*Section 58 provides: "Every licensee or agent or employee of any licensee who keeps or permits to be used or suffers to be used, in conjunction with a licensed premises, any disorderly house or place in which people abide or to which people resort, to the disturbance of the neighborhood, or in which people abide or to which people resort for purposes which are injurious to the public morals, health, convenience or safety shall be guilty of a misdemeanor."

Section 61(a) provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished or given away any alcoholic beverage to any person under the age of twenty-one years shall be guilty of a misdemeanor."

 Section 58 of the act makes it a misdemeanor for a licensee to permit his restaurant and bar to be used as a disorderly house or place "to which people resort for purposes which are injurious to public morals." The terms of the section refer to conduct on the premises or resort thereto for improper purposes, and it is clear that it would be necessary to read something into that section before it could be construed as an attempt to regulate mere patronage by any particular class of persons without regard to their conduct on the premises. (*Cf. Orloff* v. *Los Angeles Turf Club, Inc.*, 36 Cal.2d 734 [227 P.2d 449].) Members of the public of lawful age have a right to patronize a public restaurant and bar so long as they are acting properly and are not committing illegal or immoral acts; the proprietor has no right to exclude or eject a patron "except for good cause," and if he does so without good cause he is liable in damages. (See Civ. Code, §§ 51, 52.) In analogous cases it has been held that a liquor license could not be revoked on the ground that prostitutes had dined in the licensee's restaurant (*In re Farley*, 217 N.Y. 105 [111 N.E. 479]) and that a conviction of maintaining a bawdy house was not supported by evidence that women of loose or immoral character had obtained lodging in defendant's hotel (*Patterson* v. *State*, 9 Okla.Cr. 564 [132 P. 693, 695]). In the Patterson case the court pointed out that such women are human beings entitled to shelter and that it is not a crime to give them lodging unless it is done for immoral purposes. The same reasoning applies to the patronage of a public restaurant and bar by homosexuals, and mere proof of patronage, without proof of the commission of illegal or immoral acts on the premises, or resort thereto for such purposes, is not sufficient to show a violation of section 58.

The fact that the Black Cat was reputed to be a "hangout" for homosexuals indicates merely that it was a meeting place for such persons. (See Webster's New Internat. Dict.) Unlike evidence that an establishment is reputed to be a house of prostitution, which means a place where prostitution is practiced and thus necessarily implies the doing of illegal or immoral acts on the premises, testimony that a restaurant and bar is reputed to be a meeting place for a certain class of persons contains no such implication. Even habitual or regular meetings may be for purely social and harmless purposes, such as the consumption of food and drink, and it

is to be presumed that a person is innocent of crime or wrong and that the law has been obeyed. (Code Civ. Proc., § 1963, subds. 1, 33.)

▇ Defendants contend that even though the evidence is insufficient to show a violation of section 58, the license could be suspended under section 22 of article XX of the Constitution which provides that the board "shall have the power, in its discretion, to deny or revoke any specific liquor license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals." (See, also, § 40, subd. 1, of the act, which contains a similar provision.) The board's discretion under section 22, however, is not absolute but must be exercised in accordance with the law, and the provision that it may revoke a license "for good cause" necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals. (See *Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 131-132 [173 P.2d 545].) ▇ In order to establish "good cause" for suspension of plaintiff's license, something more must be shown than that many of his patrons were homosexuals and that they used his restaurant and bar as a meeting place.

▇ As to count two of the accusation, the record shows that a young man who was under age visited the Black Cat with an adult companion and purchased and consumed beer on the premises, and there is sufficient support for the finding that plaintiff's employee sold beer to a minor in violation of section 61(a) of the act. A separate penalty was not assessed for this offense, the order of indefinite suspension being based upon the finding that plaintiff had violated both sections 58 and 61(a). No prior disciplinary action had ever been taken against plaintiff, and there was evidence that the minor, who was nearly 20 years of age, looked to be 21. It appears that the usual punishment imposed under such circumstances varies from a reprimand to a limited suspension of not more than 30 days. Since it does not seem likely that plaintiff's license would have been suspended for an indefinite period on this charge alone, the matter should be remanded to the board.

We find it unnecessary to pass upon other contentions made by the plaintiff with respect to the propriety of the board's action.

The judgment is reversed with instructions to the trial court to grant a peremptory writ of mandate directing the board to set aside its order of suspension and to take such further action as may be proper.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied September 24, 1951.