[S.F. Nos. 22660, 22661. In Bank. Feb. 26, 1970.]

BORETA ENTERPRISES, INC., Plaintiff and Respondent, v.
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,
Defendant and Appellant.

(Two Cases.)

86

88

## COUNSEL

Thomas C. Lynch, Attorney General, Charlton G. Holland and L. Stephen Porter, Deputy Attorneys General, for Defendant and Appellant.

Melvin M. Belli, Paul J. Fitzpatrick, Robert L. Lieff and Belli, Ashe, Ellison, Choulos, Cone & Harper for Plaintiff and Respondent.

## OPINION

**SULLIVAN, J.**—These two cases, considered together because of their common issues, present the question of whether the Department of Alcoholic Beverage Control (Department) has abused its discretion in revoking the on-sale, general bona fide eating place license of Boreta Enterprises, Inc. (licensee) doing business as the Off Broadway in San Francisco. In each of these actions the Department has appealed from a judgment of the San Francisco Superior Court[1] granting a peremptory writ of mandate which

[1]The instant appeal is governed by procedures prevailing prior to the 1967 amendments to the review process. At that time Business and Professions Code sections

set aside the decision of the Department, affirmed by the Alcoholic Beverage Control Appeals Board (Appeals Board), ordering the license revocation. We conclude that the decision of the Department was an abuse of its discretion and, accordingly, we affirm the judgment of the court below.

On June 1, 1965, the Department filed an amended accusation (No. 6279) against licensee in one count charging that licensee, at all times a holder of an on-sale general bona fide public eating place license, permitted nine specified acts to occur which were contrary to public welfare and morals. These acts were in substance as follows: that on four specified dates in April and May 1965, certain described female employees of licensee, "in the course of their employment as waitresses and while in the actual proximity[2] to patrons who were ordering their meals and alcoholic beverages from said employees did display and expose their breasts to patrons and persons assembled on the above-named bona fide eating place"; that licensee permitted photographs depicting the exposed breasts of a named woman employee to be taken and distributed to patrons of the establishment; and that a named employee, while seated at the bar in the presence of the president of licensee corporation, "did expose her breasts to the public view of patrons seated in the bar and elsewhere" on the premises.[3]

The acts set forth in the accusation were charged as providing grounds for suspension or revocation of licensee's license under article XX, section 22 of the California Constitution and section 24200, subdivision (a) of the Business and Professions Code.[4] Additional grounds for suspension or

23090-23090.7 were added to provide for direct appellate review of Appeals Board decisions (Stats. 1967, ch. 1525, § 4, pp. 3635-3636) and sections 23090-23091 which, with Code of Civil Procedure section 1094.5, provided for judicial review by petition for writ of mandate in the superior court, were repealed. (Stats. 1967, ch. 1525, § 3, p. 3634.)

[2]"Actual proximity" was stipulated by the parties to be "[t]he propinquity of a non-affectionate waiter or waitress without touching."

[3]On motion of the Department prior to the receipt of any evidence, allegations as to three charged acts concerning licensee's wilful procurement of female employees to exhibit themselves to public view were stricken.

The original accusation was filed on May 5, 1965, in four counts. Count I charged the employment of topless waitresses and the distribution of photographs depicting the exposed breasts of a female employee. Counts II and III charged that licensee permitted female employees to "wilfully and lewdly expose their person or the private parts thereof" in violation of Penal Code section 314.1. Count IV charged that licensee "did wilfully and lewdly procure, counsel or assist female employees . . . to make an exhibition of themselves to public view which was under the circumstances offensive to decency and in violation of Section 314.2 California Penal Code."

[4]Unless otherwise indicated, all code references hereafter are to the Business and Profession Code.

Section 24200 in relevant part provides "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: (a) When the

revocation were also charged to exist under Business and Professions Code section 24200, subdivision (b), in that the acts set forth in the accusation constituted a violation of Business and Professions Code section 25601 (keeping a disorderly house).[5] There had been no prior disciplinary action against the licensee.

On July 8, 1965, prior to the hearing on the accusation in No. 6279, the Department filed a second accusation (No. 6850) against licensee in one count charging that licensee permitted 10 additional specified acts to occur which were contrary to public welfare and morals. These acts were in substance as follows: that on three specified dates in May 1965 certain described female employees of licensee "in the course of their employment as waitresses and while in the actual proximity[6] to patrons who were ordering their meals and alcoholic beverages from said employees, did display and expose their breasts to patrons and persons assembled" on the premises; and that licensee permitted photographs depicting the exposed breasts of a named female employee to be taken and distributed to patrons.[7]

As in No. 6279, the acts set forth in the accusations were alleged to provide grounds for suspension or revocation of the license under article XX, section 22 of the California Constitution and section 24200, subdivision (a)

---

continuance of the license would be contrary to public welfare or morals; but proceedings under this section upon this ground are not a limitation upon the Department's authority to proceed under Article XX, Section 22, of the Constitution."

California Constitution, article XX, section 22, in relevant part provides: "The department shall have the power, in its discretion, to deny, suspend, or revoke any specific alcoholic beverages license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, . . ."

[5]Section 24200 provides in relevant part: "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: . . . (b) Except as limited by Chapters 11 and 12 of this division, the violation or the causing or the permitting of a violation by a licensee of this division, . . . or any other penal provisions of the law of this State prohibiting or regulating the sale . . . of alcoholic beverages or intoxicating liquors."

Section 25601 provides "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or suffers to be used, in conjunction with a licensed premises, any disorderly house or place in which people abide or to which people resort, to the disturbance of the neighborhood, or in which people abide or to which people resort for purposes which are injurious to the public morals, health, convenience, or safety, is guilty of a misdemeanor."

[6]"Actual proximity" was here defined by stipulation in the same manner as set out in footnote 2, *supra.*

[7]At the hearing on the accusation the Department moved to dismiss certain allegations as to six charged acts concerning the use of topless models, the use of other topless waitresses, and licensee's wilful procurement of female employees to exhibit themselves to public view. The motion was granted and the charges as to the six acts were dismissed.

of the Business and Professions Code. It was also charged that the acts set forth provided additional grounds for such suspension or revocation under section 24200, subdivision (b) in that they were a violation of section 25601. Prior to filing either accusation, the Department had issued a "policy statement" condemning topless waitresses and warning against their use. The Department has never claimed that this was a duly issued regulation (see § 25750 and Gov. Code, §§ 11370-11445) and, indeed, neither accusation charged licensee with a violation of any departmental rule or regulation or mentioned the above policy statement in any way.

In response to the Department's accusations, licensee filed notices of defense pursuant to Government Code section 11506 and requested that it be granted hearings. Licensee filed identical briefs in which it: denied that the licensed premises constituted a "disorderly house" within the meaning of the provisions of section 25601; asserted that the conduct charged in the accusations was a protected form of expression under the First Amendment to the United States Constitution; claimed that the exact conduct involved in the accusations had been held not to be obscene in a prior criminal proceeding against the licensee and other defendants; contended that the Department was "an unappropriate tribunal for the adjudication of constitutional facts, [and] the mere assertion of jurisdiction . . . in and of itself, constitutes an unconstitutional prior restraint of expression," and prayed that the accusations be dismissed.

Hearings were held in each action before different hearing officers of the Office of Administrative Procedure. At the hearing on No. 6279, the parties stipulated that the facts alleged in the accusations were true.[8] In addition, certain photographs were introduced into evidence depicting topless girls on the licensed premises in order to show the type of costume worn by the waitresses and the nature of the photographs distributed to the patrons. The hearing officer found, pursuant to the stipulation, that the factual allegations of the accusation were true and that they provided grounds for the suspension or revocation of the license pursuant to article XX, section 22 of the Constitution and section 24200, subdivisions (a) and (b), of the Business and Professions Code. He recommended that the licensee's license be revoked but that the revocation be stayed upon the condition that no cause for disciplinary action against licensee occur within one year. The Department adopted the hearing officer's proposed decision and ordered the penalty there recommended. Licensee appealed to the Alcoholic Beverage Control Appeals Board which, after a hearing, affirmed the Department's

---

[8]The parties did not stipulate that such conduct was contrary to public welfare or morals or that it constituted a violation of section 25601 of the Business and Professions Code.

decision in its entirety. A petition for writ of mandate was then filed in the trial court by the licensee and an alternative writ thereafter issued.[9]

After the hearing in No. 6279 and before issuance of the hearing officer's proposed decision therein, a separate hearing was held in No. 6850 before a different hearing officer. The parties again stipulated that the facts as alleged were true (see fn. 8, *supra*) and also introduced certain photographs of topless girls into evidence. The hearing officer's proposed decision found as a fact that the allegations of the accusation which had been stipulated to were true, and that, as a result, grounds for suspension or revocation of the license existed under article XX, section 22 of the Constitution and section 24200, subdivisions (a) and (b) of the Business and Professions Code. The hearing officer recommended that the license be revoked but that the revocation be stayed upon the condition that it be suspended for 30 days and that no cause for disciplinary action against licensee occur within one year of the effective date of that decision.[10] The Department adopted the proposed decision and ordered that revocation be stayed upon the conditions recommended by the hearing officer. After the Appeals Board had affirmed the Department's decision, licensee filed a separate petition for writ of mandate in the trial court and that court issued an alternative writ.[11]

The trial court found that there was no substantial evidence showing "that the presence of topless waitresses encourages the consumption of liquor" or "intemperance or immorality," or showing "that the presence of topless waitresses is contrary to public health and welfare." The court concluded that the Department had failed to demonstrate grounds for suspension or revocation of licensee's license under section 24200; that the order of revocation of the license was "unjust, arbitrary and capricious," and that no regulations or statutes prohibited licensee's conduct. The court thereupon granted judgment for licensee and ordered the issuance of a peremptory writ of mandate commanding the Department to set aside its decision. This appeal by the Department followed.

---

[9]The petition for writ of mandate was the proper method to review decisions of the Appeals Board at the time licensee filed its petition below. That procedure has been replaced by the writ of review provisions enacted in 1967 and found in Business and Professions Code section 23090 et seq. (See fn. 1, *supra*.)

[10]In its brief to this court, the Department characterizes the effect of its decision in No. 6279 as having been to place licensee "on straight probation" for one year. Its decision in No. 6850 also involved one-year probation but, in addition, included a 30-day suspension of the license privileges as a condition of the probation.

[11]The trial court heard argument on both petitions together and issued identical findings of fact and conclusions of law. For this reason as well as for convenience the cases will hereinafter be treated together although no order of consolidation has issued.

The Department contends that it was the duty of the trial court merely to determine whether the findings of the Department were supported by substantial evidence and that the court erred in deciding that they were not. The Department's position is that it did not abuse its discretion in determining that the employment of topless waitresses to solicit orders for and to serve alcoholic beverages was conduct which is contrary to public welfare or morals.

We commence our consideration of this issue with some observations concerning the nature and scope of judicial review appropriate when a decision of the Department of Alcoholic Beverage Control is challenged. The rules we set forth here as governing our function on review are equally applicable to the proper conduct of the trial court in its review of the decision of the Appeals Board. (*De Martini* v. *Department of Alcoholic Beverage Control* (1963) 215 Cal.App.2d 787, 798 [30 Cal.Rptr. 668].)

At the outset we emphasize that the fundamental distinction between factual determinations and legal conclusions in the ordinary civil case obtains in the review of the administrative proceedings of the Department. Thus there is a distinction between our review of findings of fact made by the Department and our review of conclusions of law (ordinarily designated "Determination of Issues") reached by the Department. Insofar as the Department's factual findings are concerned, the scope of review is strictly limited. Since the Department is an agency upon which the Constitution has conferred limited judicial powers[12] (Cal. Const., art. XX, § 22), the reviewing court is not entitled to exercise its independent judgment on the effect or weight of the evidence, but is simply called upon to determine whether the findings are supported by substantial evidence in the light of the whole record. (Code of Civ. Proc., § 1094.5 subd. (c); *Morell* v. *Department of Alcoholic Beverage Control* (1962) 204 Cal.App.2d 504, 507 [22 Cal.Rptr. 405]; see also, *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 638, fn. 22 [83 Cal.Rptr. 208, 463 P.2d 432].) We, no more than the Appeals Board, or the trial court may "disregard or overturn a finding of fact of the Department . . . for the reason that it is considered that a contrary finding would have been equally or more reasonable." (*Bowman* v. *Alcoholic Beverage etc. Board* (1959) 171 Cal.App.2d 467, 471-472 [340 P.2d 652].) ▮ In sum, as the court succinctly stated in *Harris* v. *Alco-*

---

[12]We defined the scope of the Department's power in the following manner in *Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 131 [173 P.2d 545]: "An examination of the Constitution of California shows that the State Board of Equalization, unlike most other agencies of statewide authority [citation] has specifically been given *quasi judicial,* or adjudicating power, that is, the right to make determinations of *fact* which are not subject to reexamination in a trial de novo in the superior court." (Italics added.)

*holic Beverage Control Appeals Board* (1963) 212 Cal.App.2d 106 [28 Cal.Rptr. 74]: "The scope of review at each of the three levels of review[13] is the same and consists in the application of the substantial evidence rule to the original record of the Department." (212 Cal.App.2d at p. 113.)

■ A different set of principles governs our review of administrative action to the extent that it consists of declarations or applications of legal rules or is the statement of the conclusions of law which are drawn from facts found in an adjudicatory proceeding. We delineated the scope of our review in this regard in *Covert* v. *State Board of Equalization,*[14] *supra,* 29 Cal.2d 125 in these terms: "[T]he decisions of the board are final, subject to review for excess of jurisdiction, errors of law, abuse of discretion and insufficiency of the evidence, . . ." (29 Cal.2d at p. 132.)[15]

More frequently, we have articulated this concept in terms of a scope of review which insures that the discretion vested in the Department over the licensing process will not be abused. The cases have phrased this standard in varying formulations but the basic idea, a judicially established limit to the admittedly broad power of the Department, has remained constant. Thus, in *Stoumen* v. *Reilly* (1951) 37 Cal.2d 713 [234 P.2d 969], we mandated the reversal of a license suspension, stating, "The board's [of Equalization] discretion under section 22 [of article XX of the Constitution] however, is not absolute but must be exercised in accordance with the law, and the provision that it may revoke a license 'for good cause' necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals." (37 Cal.2d at p. 717.) (See also *Vallerga* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 313, 318-319 [1 Cal.Rptr. 494, 347 P.2d 909].)

---

[13]The court in *Harris* was referring to the review by the Appeals Board, the superior court, and the appellate courts. In regard to review of Department findings we stand in the same position as do the Courts of Appeal and the trial courts.

[14]The Department of Alcoholic Beverage Control subsequently became the constitutional successor to the State Board of Equalization with regard to liquor control. (Cal. Const., art. XX, § 22, as amended in 1954.) (See *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141, 144 [346 P.2d 737].)

[15]The categories listed in *Covert* parallel those of the statutory section governing our review of this matter, i.e., section 1094.5, subdivision (b), of the California Code of Civil Procedure. That section provides, in part, as follows: "The inquiry in such a case [one of those set forth in section 1094.5, subdivision (a)] shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

In *Martin* v. *Alcoholic Beverage etc. Appeals Board* (1961) 55 Cal.2d 867 [13 Cal.Rptr. 513, 362 P.2d 337], we made another effort to formulate a standard by which we would measure the actions of the Department. We there approved a decision of the Appeals Board reversing the Department's denial of a license on the ground that the applicant's premises were in close proximity to a church. In emphasizing the limitations which the constitutional requirement of "good cause" imposes upon the Department's discretion we stated that the "department is bound to exercise a legal discretion," and held that in these circumstances "legal" discretion was equivalent to "judicial" discretion. We quoted the court's language in *Gossman* v. *Gossman* (1942) 52 Cal.App.2d 184, 194-195 [126 P.2d 178]: "Courts have often asserted that such power is broad and inclusive. That assertion is true, but it is true only within the limits of fixed legal principles [citation]. Such power cannot enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled. The mere fact that a court may have jurisdiction to make an order does not equip it to exercise *judicial discretion*. Its acts must not only be confined within the field of *discretion* but must also be of a character within the bounds of the limiting adjective 'judicial.' . . . The term 'judicial discretion' was defined in *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424, as follows: 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.' " (55 Cal.2d at pp. 875-876.)

This restatement of the principles governing our review illustrates the difficulty inherent in constructing any formula which will accurately and precisely set out the role of court and agency in this area.[16] As is apparent, while it provides a framework for our inquiry, it does not resolve the major issue before us: whether the Department acted within its discretion in revoking a license on the sole ground that the licensee employed topless waitresses to solicit orders for and serve alcoholic beverages on its premises.

To put it another way, the crucial question confronting us is whether evidence of the presence of topless waitresses, without any evidence of improper conduct on their part toward the patrons or of the effect their presence had on the behavior of patrons, constitutes "good cause"[17] for the revocation of a license under: (1) article XX, section 22 and/or section 24200, subdivision (a), as conduct contrary to public welfare or morals; or

[16]See Netterville, *Administrative "Questions of Law" and the Scope of Judicial Review in California* (1956) 29 So.Cal.L.Rev. 434, 436.

[17]We interpret the constitutional requirement of "good cause" as implying, inter alia, that the administrative decision comply with the standards implicit in the definition of "abuse of discretion" set forth in section 1094.5, subdivision (b). Thus in this case the relevant inquiry, in determining whether there was good cause for the license revocation, is whether the order was supported by the findings.

(2) section 24200, subdivision (b), as conduct violative of section 25601 which prohibits the keeping of a "disorderly house" in conjunction with a licensed premises.

We begin with a consideration of the latter issue. Section 25601 provides: "Every licensee, or agent or employee of a licensee, who keeps, permits to be used, or suffers to be used in conjunction with a licensed premises, any disorderly house or place in which people abide or to which people resort, to the disturbance of the neighborhood, or in which people abide or to which people resort for purposes which are injurious to the public morals, health, convenience, or safety, is guilty of a misdemeanor." It is apparent that three distinct courses of conduct are described by section 25601: first, the keeping of a disorderly house; second, the keeping of a house which disturbs the neighborhood; and third, the keeping of a house to which people resort for purposes which injure, inter alia, public morals. It is clear from the record that the decision of the Department could not have properly been based on either of the latter two grounds since there was absolutely no evidence that the licensed premises disturbed the neighborhood or that people resorted to such premises for any of the purposes condemned by the statute. Thus, the determination that section 25601 was violated must, perforce, have been based on the conclusion that it constituted a "disorderly house."

Two sections of our Penal Code authorize criminal prosecutions for keeping disorderly houses. Penal Code section 315 prohibits the keeping of a house of ill fame resorted to for purposes of prostitution or lewdness. Penal Code section 316 prohibits the keeping of a house for purposes of assignation or prostitution. Prosecution under these statutes appears to have been directed almost entirely against those who operate houses of prostitution. (See, for example, *Board of Supervisors* v. *Simpson* (1951) 36 Cal.2d 671, 675 [227 P.2d 14]; *Pon* v. *Wittman* (1905) 147 Cal. 280, 292 [81 P. 984]; *People* v. *Hobson* (1967) 255 Cal.App.2d 557 [63 Cal.Rptr. 320]. See also *In re Lane* (1962) 58 Cal.2d 99, 103 [22 Cal.Rptr. 857, 372 P.2d 897]; *In re Selowsky* (1918) 38 Cal.App. 569, 580 [177 P. 301]; *Farmer* v. *Behmer* (1909) 9 Cal.App. 773, 779 [100 P. 901].) Certainly their historical origin was in efforts to abate houses of prostitution. A review, however, of cases involving revocations of licenses for violations of section 25601 reveals that the term has not been confined to its earlier meaning. Instead, it has been applied to a relatively wide range of activities occurring on licensed premises which have involved threats to the safety or tranquility of the surrounding neighborhood[18] or conduct which is either

[18]*Harris* v. *Alcoholic Beverage Control Appeals Board* (1963) 212 Cal.App.2d 106 [28 Cal.Rptr. 74] (permitting intoxicated persons to frequent the premises);

independently illegal[19] or consists of overt public displays of and attempts to gratify sexual (usually homosexual or lesbian) desires.[20]

Despite the frequency with which appellate courts have upheld departmental conclusions that a particular licensed premises constituted a disorderly house, only one of the cases cited above (at fns. 18, 19, and 20) made even a cursory effort to define the term. *Los Robles Motor Lodge, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 246 Cal.App.2d 198, while asserting that the phrase has a specific meaning "both in common parlance and in common law" selected two definitions from other jurisdictions listed in 12A Words and Phrases (1966 Supp.) which appear to us to be somewhat inconsistent.[21] We offered a negative definition of the term in

*Givens* v. *Department of Alcoholic Beverage Control* (1959) 176 Cal.App.2d 529 [1 Cal.Rptr. 446] (permitting the premises to be frequented by intoxicated persons; frequent fights and other disturbances on premises); *Swegle* v. *State Board of Equalization* (1954) 125 Cal.App.2d 432 [270 P.2d 518] (permitting the premises to be frequented by intoxicated persons; series of fights and disturbances on premises).

[19]*Munson* v. *Department of Alcoholic Beverage Control* (1967) 248 Cal.App.2d 598 [56 Cal.Rptr. 805] (permitting solicitation of prostitution on premises); *Los Robles Motor Lodge, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 246 Cal.App.2d 198 [54 Cal.Rptr. 547] (permitting solicitation of prostitution); *Stoumen* v. *Munro* (1963) 219 Cal.App.2d 302 [33 Cal.Rptr. 305] (solicitation of acts in violation of Penal Code section 288a); *Coleman* v. *Harris* (1963) 218 Cal.App.2d 401 [32 Cal.Rptr. 486] (either permitting solicitation of prostitution or permitting a female to loiter for purposes of soliciting a customer to purchase an alcoholic drink in violation of section 25657, subdivision (b), of the Business and Professions Code); *Adler* v. *Department of Alcoholic Beverage Control* (1959) 174 Cal.App.2d 256 [344 P.2d 366] (permitting solicitation of acts of prostitution on premises); *Maloney* v. *Department of Alcoholic Beverage Control* (1959) 172 Cal.App.2d 104 [342 P.2d 520] (permitting gambling, bookmaking and related activities to occur on premises); *Rosales* v. *Department of Alcoholic Beverage Control* (1959) 171 Cal.App.2d 624 [341 P.2d 366] (permitting solicitation of prostitution on premises; serving alcoholic beverages to obviously intoxicated persons); *Nelson* v. *Department of Alcoholic Beverage Control* (1959) 166 Cal.App.2d 783 [333 P.2d 771] (permitting solicitation of prostitution on premises); *Maxwell Cafe* v. *Department of Alcoholic Beverage Control* (1956) 142 Cal.App.2d 73 [298 P.2d 64] (permitting solicitation, gambling, bookmaking on premises; permitting intoxicated persons to remain on premises and selling alcoholic beverages to obviously intoxicated persons).

[20]*Stoumen* v. *Munro, supra,* 219 Cal.App.2d 302 (permitting, inter alia, solicitations of sexual conduct violative of Penal Code section 288a); *Morell* v. *Department of Alcoholic Beverage Control, supra,* 204 Cal.App.2d 504 (permitting the solicitation of "lewd" acts, continual occurrence of conduct which was lewd, obscene, and constituted sexual perversion); *Benedetti* v. *Department of Alcoholic Beverage Control* (1960) 187 Cal.App.2d 213 [9 Cal.Rptr. 525] (permitting the solicitation of lewd acts); *Kershaw* v. *Department of Alcoholic Beverage Control* (1957) 155 Cal. App.2d 544 [318 P.2d 494] (permitting the solicitation of lewd acts, permitting patrons to engage in aberrant sexual conduct); *Nickola* v. *Munro* (1958) 162 Cal. App.2d 449 [328 P.2d 271] (permitting patrons to engage in open and aberrant sexual conduct).

[21]The first definition is from *Curley* v. *State*, 215 Md. 382 [137 A.2d 640, 644]: "A house is 'disorderly' if kept as a place where acts prohibited by statute are habitu-

*Stoumen* v. *Reilly* (1951) 37 Cal.2d 713 [234 P.2d 969] when we held that simply showing patronage of a premises by homosexuals was insufficient to support a revocation of its license as a disorderly house. We said, "[P]roof of the commission of illegal or immoral acts on the premises, or resort thereto for such purposes" is required. (37 Cal.2d at p. 716.) No claim is made that the conduct described in the accusations now before us was illegal other than as a violation of section 25601 itself. No case has held such conduct sufficiently "immoral" to warrant revocation under section 25601. Resolution of whether the Department's conclusion could properly have been made on this second ground (i.e., immoral conduct) involves considerations identical to whether its conclusion, on this record, that the conduct was "contrary to public welfare or morals" under article XX, section 22 and section 24200, subdivision (a), was proper. We now take up that issue.

While conceding that the use of topless waitresses is not obscene, illegal, or in violation of any rule or regulation duly issued by it, the Department contends that such use is nonetheless per se contrary to public welfare and morals and constitutes in and of itself good cause for the decision to revoke the license.[22]

In the first place, we confess some difficulty in apprehending how the Department could consider something to be per se contrary to public *welfare.* ▆ It seems apparent that the "public welfare" is not a single, platonic archetypal idea, as it were, but a construct of political philosophy embracing a wide range of goals including the enhancement of majority interests in safety, health, education, the economy, and the political process, to name but a few. In order intelligently to conclude that a course of conduct is "contrary to the public welfare" its *effects* must be canvassed, considered and evaluated as being harmful or undesirable. Ordinarily it is delusive to speak in terms of conduct which is per se contrary to public welfare. Additionally, to permit such "per se" determinations to be made

ally indulged in or permitted." The second is that contained in *Payne* v. *United States* (D.C. Mun.App.) 171 A.2d 509, 511: "[A] disorderly house is one where acts are performed which tend to corrupt morals of the community or promote breaches of the peace." (Fn. omitted.)

[22]We do not mean to intimate that the Department is confined to considering violations of criminal statutes or departmental directives as grounds for suspension or revocation under section 24200, subdivision (a). It is not disputed that while the Department may properly look to and consider a licensee's violation of the Alcoholic Beverage Control Act, the Penal Code, other state and federal statutes, or Department rules as constituting activities contrary to public welfare or morals, it may also act on situations contrary to the public welfare or morals in the sale or serving of alcoholic beverages regardless of legislative expressions of policy on the subject or prior departmental announcements.

by regulatory agencies would insulate them from effective judicial review. The courts would have no indication of the reasons supporting administrative actions and would be forced either passively to accept the pronouncements of the agency or simply to substitute their notion of the "public welfare."

The Department's assertion that the use of topless waitresses, in itself and without more, is conduct contrary to public *morals* and thus in itself constitutes grounds for the Department's action, raises a different issue. Public morals, like public welfare a concept relevant to the civil order, are frequently difficult to identify in a pluralistic society which is highly heterogeneous in race, religion, national origin and social background and which today is sometimes in dissension, often in ferment and constantly in flux.[23] We do not presume to descant upon morality or upon the wisdom of the enforcement of moral principles through the legal process.[24] We agree that some conduct may intelligibly be said to be immoral per se in that when considered in the moral order, rather than in the civil order, it deviates from principles dictated by right reason to be good and therefore to be followed.

■ This, however, is not the focal point of our present inquiry. We here examine the power invested by the Constitution in the Department to revoke a specific alcoholic beverage license "if it shall determine *for good cause* that the . . . continuance of such license would be contrary to *public* . . . morals, . . ." (Cal. Const., art. XX, § 22; italics added; see fn. 4, *ante*.)[25] This requires us to observe the distinction between private morality and public morality, between the imperatives of the moral order and the mandates of the civil order. It is therefore the *public* morals, not the *private* morals of the officials or employees of the Department, however conscientious or well-intentioned, which must be the criteria in the instant case. In other words, in resolving the issue before us, our reference

[23]See for example *In re Davis* (1966) 242 Cal.App.2d 645, 652 [51 Cal.Rptr. 702]. See also *In re Giannini* (1968) 69 Cal.2d 563, 574-576 [72 Cal.Rptr. 655, 446 P.2d 535], cert. denied 395 U.S. 910 [23 L.Ed.2d 223, 89 S.Ct. 1743]; *Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1, 10-11 [56 Cal.Rptr. 853].

[24]That ancient controversy is related to the disposition of this case only to the extent that the decision of the Department is explicitly based and defended on the sections of the state Constitution and Business and Professions Code which are premised on acceptance of the notion that it is the proper business of the state to protect the morals of the people.

[25]See, e.g., *Harris* v. *Alcoholic Beverage Control Appeals Board, supra,* 212 Cal. App.2d 106, 119: "While there are procedural differences between application matters and disciplinary matters, there are basically no substantial differences. In both, it is the responsibility of the Department to safeguard the *public* interest. . . . In both proceedings, *public* welfare and morals are to be preserved in the one case from probable impairment in the future, in the other, from actual, existing injury." (Italics added.)

must be to the morals of the people, that is, to those of the community at large, of the whole body of the people. (See *Duskin* v. *State Board of Dry Cleaners* (1962) 58 Cal.2d 155, 163 [23 Cal.Rptr. 404, 373 P.2d 468]; see definition of "public," Black's Law Dictionary (4th ed. 1951); Webster's Third New Internat. Dict.) ▆ If by "morals" we mean "the moral practices of an individual or culture: habits of life or modes of conduct" (Webster's, *op. cit.*, see "moral") we think the term "public morals" must be taken to mean the moral practices or modes of conduct "[p]ertaining to a . . . whole community; . . . relating to . . . the whole body of people or an entire community." (Black's Law Dictionary, *supra; Duskin* v. *State Board of Dry Cleaners, supra.*)

▆ There may be cases in which the conduct at issue is so extreme that the Department could conclude that it is per se contrary to *public* morals. By this we mean that it is so vile and its impact upon society is so corruptive, that it can be almost immediately repudiated as being contrary to the standards of morality generally accepted by the community after a proper balance is struck between personal freedom and social restraint. But we cannot say that the employment of "topless" waitresses in the context of a licensed bar and/or restaurant is such a case.

The Department contends that employment of so-called[26] bare-breasted waitresses in licensed premises is a "radical innovation in sexual mores" since the "average" female worker does not expose her breasts during the course of her employment. Therefore, it argues, this conduct is contrary to public morals and does not promote the "clean and wholesome" environment that liquor establishments are to maintain. Two responses are appropriate. First: a bar is not a church; the "clean and wholesome" conditions mentioned in *Cornell* v. *Reilly* (1954) 127 Cal.App.2d 178, 184 [273 P.2d 572], upon which the Department relies, are not identical to those that would be considered clean and wholesome in a high school classroom. (See, e.g., the conditions approved by this court in *Stoumen* v. *Reilly, supra,* and *Vallerga* v. *Department of Alcoholic Beverage Control, supra.*) Second: the courts of this state have recognized the inconclusive and indecisive state of the consensus of society regarding the propriety and morality of public and quasi-public displays of female breasts.

In *In re Davis, supra,* 242 Cal.App.2d 645, reversing the conviction of a topless fashion model for openly outraging public decency, the court said: "[W]e cannot say that in a society in which family magazines which no one

---

[26]Actually, it appears from the accusations that those employees who acted as waitresses were not completely "topless." Rather, they wore a peculiar garb consisting of, in the language of the accusations, "black tights and black net top with breasts exposed."

would think of hiding from the children, have for years played peek-a-boo with the female breast, it is 'plain as a pike-staff' that a woman who exposes her bust for a brief period, without suggestive movements, before a limited group of adults of both sexes, outrages public decency . . . ." (242 Cal. App.2d at p. 667.) Similarly, the court in *Robins v. County of Los Angeles, supra,* 248 Cal.App.2d 1, involving local efforts to control topless waitresses, observed: "[W]e are constrained to the view that the display of the bare female bosom, whether defined as 'entertainment' or not, . . . does not constitute criminal sexual activity. . . . [Citations.] Yet we observe that full exposure of the naked female breast is not socially commonplace and, until it becomes so accepted, the reasonable regulation of public premises where the advertised ritual of breast exposure is observed appears appropriate *insofar as it does not presume dubious morality."* (Italics added.) (248 Cal.App.2d at pp. 10-11.) And this court, confronted last year with the issue of criminal prosecution of a topless dancer remarked, in holding that proof of contemporary community standards of prurience and candor was required, ". . . this case involves a 'topless' dance shown only to adults [citation] who knew exactly what they were going to see. Since this conduct is not so patently offensive as to violate any conceivable community standard, we need not decide whether evidence of community standards must be introduced in an extreme and unquestionable situation." (*In re Giannini, supra,* 69 Cal.2d at pp. 575-576, fn. 8.)

We also note the current vogue of partial nudity in "serious" films and theatrical productions, the display of bare breasts in national magazines of widely varying editorial policy and intended readership, and the recently stylish exposure of the upper torso in fashions designed for the supposedly *soigne* members of our society. While, of course, we express no opinion as to any of these phenomena, they do indicate an obvious lack of societal consensus as to the morally permissible degree of diaphanous raiment and public dishabille.

As to the probably less modish ladies in the licensee's employ, we are not confronted with any problem of obscenity emerging from their state of undress (see fn. 26, *ante*), since the Attorney General has conceded that their appearance and conduct as waitresses were not obscene. No evidence in the record compels the conclusion that such attire, or lack of attire, corrupts the morals of the community, however tawdry or bogus all of this may be in the eyes of those who may prefer to drink in a more genteel atmosphere.[27]

---

[27]We find applicable here our observation in *People v. Noroff* (1967) 67 Cal.2d 791, 796-797 [63 Cal.Rptr. 575, 433 P.2d 479], cert. denied 390 U.S. 1012 [20 L.Ed.2d 161, 88 S.Ct. 1261]: "The United States Supreme Court has wisely recog-

Thus on the present record we are unable to say that the Department was warranted in concluding that the conduct in this case was per se contrary to public morals. ▪ The Constitution formulates the standard for departmental action in terms of public morals. This does not imply that the subjective moral notions of the Department itself necessarily express or reflect actual public morality. Rather, the modifying adjective "public" necessarily indicates the obligation to apply an objective standard.

▪ We hold, therefore, that the action of the Department cannot be approved on the basis that topless waitresses are per se contrary to public welfare or morals. As we think the trial court properly determined, any such conclusion on the record before us was necessarily arbitrary and an abuse of discretion within section 1094.5, subdivision (b), of the Code of Civil Procedure.[28]

The Department also contends that an independent, alternative ground supports its decision that continuance of the license would be contrary to public welfare or morals. This ground is the prevention of improper activities and socially deleterious consequences which tend to result from the use of bare-breasted waitresses in establishments that serve alcoholic beverages.[29] No evidence of any of these essentially factual matters was intro-

---

nized that ultimately the public taste must determine that which is offensive to it and that which is not; a public taste that is sophisticated and mature will reject the offensive and the dull; it will in its own good sense discard the tawdry, and once having done so, the tawdry will disappear because its production and distribution will not be profitable. Understandably, such maturity does not come quickly or easily, and, in a time when the strictures of Victorianism have been replaced by wide swings of extremism, it seems hopelessly remote."

[28]Our holding applies as well to the Department's alternative ground for revocation, i.e., that the presence of topless waitresses made the licensed premises a "disorderly house" in violation of section 25601. As our discussion of that section indicated, *supra,* at page 99, the only remaining basis for that determination was that immoral acts, namely the use of topless waitresses, occurred on the premises. The absence of any evidence regarding the "public morals" as they relate to topless waitresses renders any conclusion that they are "immoral" equally unsupported by the findings and hence an abuse of discretion within section 1094.5, subdivision (b).

[29]The Department argues that it could reasonably revoke licensee's license in order to protect the public welfare and morals from the following evils. It contends:

First, that employment as a topless waitress is a degrading and humiliating experience, that it could consider the effects on the psyches and morals of the female employees in determining "whether bare breasts belong in an establishment under its jurisdiction," and that it was motivated by a concern to protect these same employees from the vulgarity and violence which tend to develop more frequently at bars than at other places.

Second, that the use of topless waitresses repeats the classic "B-Girl" pattern which the Legislature and the Department have made grounds for the revocation of

duced at the hearings. No evidentiary support can be found in the contentions of the Department regarding its experience with various other topless establishments or regarding the evils alleged to be causally associated with topless waitresses. ■■■ As we held in *English* v. *City of Long Beach* (1950) 35 Cal.2d 155, 158 [217 P.2d 22, 18 A.L.R.2d 547]: "Administrative tribunals which are required to make a determination after a hearing cannot act upon their own information and nothing can be considered as evidence that was not introduced at a hearing of which the parties had notice or at which they were present. [Citation.] [T]he right of a hearing before an administrative tribunal would be meaningless if the tribunal were permitted to base its determinations upon information received without the knowledge of the parties. A hearing requires that the party be apprised of evidence against him so that he may have an opportunity to refute, test, and explain it, and the requirement of a hearing necessarily contemplates a decision in light of the evidence there introduced." (See also, *La Prade* v. *Department of Water & Power* (1945) 27 Cal.2d 47, 52 [162 P.2d 13].)

■■■ We emphasize that it is the record of the proceedings in the Department which is the subject of our review. The record in this case is extraordinarily sparse; there is no reference to any of the grounds which the Department now presents on appeal as reasons in support of its action. More important, however, there is no evidence in the record which would permit us to conclude that the evils which the Department seeks to avoid are in fact related to the use of topless waitresses or ever occured on licensee's premises.

Thus, the Department seeks to uphold its revocation on the theory that in so doing it is protecting the working girl from the possibility of violence and from the humiliation and degradation which attend exposure of her breasts in public for financial reward. While these are commendable motives, action based upon them is not warranted on this record. The Department introduced no testimony regarding the actual psychological effects

---

licenses. This pattern involved the use of female employees to solicit patrons of the establishment to purchase large numbers of exhorbitantly priced drinks (which often were nonalcoholic, though represented to be liquor) for the girls themselves. The evil which the Legislature was attempting to correct was the commercial exploitation of the customer resulting from the solicitation to purchase drinks for others. The Department claims that the intent and effect of the topless waitresses are analogous; i.e., they are to induce the patron through masculine sexual excitement to order as many drinks as possible in order to keep the waitress in his immediate presence.

Third, that topless waitresses, also as a result of the libidinous drives they loose in male patrons, cause these customers to order more drinks than they would normally and that the thus stimulated sales lead to intemperance which the Department is charged to reduce.

Fourth, that topless waitresses create an atmosphere in bars and taverns which,

topless waitresses experience as a result of their employment. Nor was there any evidence that violence or vulgarity is more frequent at those establishments which employ topless waitresses than at others, or that any violent incident ever occurred on the licensee's premises.

 The Department contends that the topless waitresses present the same danger of exploitation of the customers that "B-Girls" did and should therefore be eliminated. The suggestion is not entirely implausible but it is insufficient as a ground for revocation; there is no evidence in this record that the waitresses solicited customers to purchase drinks for them, or accepted drinks from the patrons.

The Department asserts that licensee's intent in employing topless waitresses is to stimulate increased sales of alcoholic beverages and that their actual effect is to cause the customer to order more drinks than he normally would. This is claimed to permit departmental discipline under its statutory mandate "to promote temperance in the use and consumption of alcoholic beverages." Even though it would seem easily obtainable, there was no evidence introduced as to the average number of drinks ordered by licensee's customers, whether the per capita consumption level was higher than that at other bars or restaurants in the area which did not employ topless waitresses, or whether excessive drinking at the licensed premises became a problem for the police department. There is no evidence that anyone was induced to drink to excess by the efforts (or simply by the presence) of topless waitresses. The Department cannot, in its desire to reduce intemperance, resort to the expedient of revoking licenses without good cause.

As a final basis on which to predicate the disciplinary action, the Department contends that topless waitresses create opportunities for criminal and lewd conduct which it strenuously desires to stamp out. No claim is made, however, that any such conduct has taken place at the licensed premises and no evidence was produced which would support such a claim. Indeed, the stipulated facts preclude a finding of any improper physical contact between the waitresses and patrons.[30]

when combined with the above noted increased consumption of alcohol by male patrons, fosters the occurrence of improper and lewd acts. The necessarily close proximity of the waitress to the patrons "provides an open opportunity and enticement to the drinking male patron to engage in improper or lewd conduct with her."

[30]The Department, in an effort to establish the legitimacy of its fears that topless waitresses lead inevitably to improper relationships with the patrons, refers us to the records of various accusations it has filed against *other* licensees. These records were

 The only conduct charged and proved by the Department is the employment of topless waitresses and the distribution of their photographs to licensee's patrons. This conduct was not illegal nor was it in violation of any duly issued rule or regulation of the Department. There was absolutely no evidence presented by the Department at either of the hearings which tended to support its conclusion that topless waitresses are contrary to the public welfare and morals because they necessarily lead to improper conduct. No intemperance, exploitation, or lewd or criminal contact between customers and the waitresses were shown to have occurred on the premises.[31] The challenged conduct in this case did not occur in the presence of juveniles or in the public streets. In sum there was neither illegal nor improper conduct on the part of licensee's waitresses. To establish "good cause" for the revocation of licensee's license, something more must be shown than that the licensee employed topless waitresses. (See *Stoumen* v. *Reilly, supra,* 37 Cal.2d 713, 717; *Vallerga* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 313, 319.) In these circumstances, the decision of the Department was not supported by the findings and hence constituted an abuse of discretion.

 Finally, although it appears unnecessary, we point out that our conclusions have been reached on the record before us. We are not unaware of the public concern for proper regulation of premises licensed to sell alcoholic beverages. Our holding confers on them neither a general sanction to employ topless or other similarly undressed waitresses nor a general immunity from the Department's disciplinary action in the event they do. If such purveying of liquor is in fact attended by the deleterious consequences which the Department claims, it should have no difficulty, in appropriate disciplinary proceedings, in proving them. In a word it should establish "good cause" and make out its case. Alternatively, the Department could draw upon its expertise and the empirical data available to it and adopt regulations covering the situation. (§ 25750.)

Here, however, the Department has done neither. Asserting at oral argument that the formulation of a regulation was a difficult task, the Department elected to enter into various stipulations at the administrative hearings and to rest its case on skeletal proof. After thus narrowing the issue, it has in effect called upon us to pronounce a rule in an area in which

---

not brought out at the hearing in this case and had they been it is difficult to perceive what relevance they would have had. It was licensee's premises and the conduct which occurred there which is in issue in this proceeding to revoke its license.

[31]We assume that, had such evidence been available, either in its files or those of other law enforcement agencies, the Department would have, in the efficient prosecution of its duties, introduced it at the disciplinary hearings.

the Department itself is reluctant to adopt one. We decline to probe the metaphysics of toplessness "as such."[32]

The judgments are affirmed.

Traynor, C. J., Peters, J., Tobriner, J., and Mosk, J., concurred.

**BURKE, J.**—I dissent.

Although the adoption by the Department of Alcoholic Beverage Control of a regulation covering the employment of topless waitresses in bars or restaurants licensed to serve liquors, as discussed by the majority, may be a preferable procedure, nevertheless it appears that the department did in fact announce a policy against the use of topless bar waitresses. This policy statement was in effect at the times here involved and was in the following language:

"The Department considers contrary to public welfare and morals conduct in any licensed premises where licensees, waitresses or other females employed or performing any type of services within or upon the licensed premises when commingling with or waiting upon patrons, expose their bare breasts or wear any type costume through which the bare breast may be observed. Such licensees are to be instructed to immediately discontinue such activity or face an accusation."

Timely notice of this policy statement was given to all bar licensees, including the licensee now before the court, who does not contend that such notice was lacking. Accordingly, it appears that licensee is not in the position of one unexpectedly charged with conduct he was not aware the department considered to be contrary to public welfare and morals. (See *Magit v. Board of Medical Examiners* (1961) 57 Cal.2d 74, 88 [17 Cal.Rptr. 488, 366 P.2d 816].)

In my view common knowledge, to say nothing of the experience and expertise of the department, supports the position of the department with respect to the employment of topless cocktail waitresses.

As the court pointed out in *City of Milwaukee* v. *Piscuine* (1963) 18 Wis.2d 599 [119 N.W.2d 442, 449-450], in upholding an ordinance prohibiting certain conduct of women employees of bars, "Although standing or sitting at a bar may not by itself be conduct which is against morals and the

---

[32]The licensee suggests that the display of bare breasts here in issue is a form of expression entitled to the protection of the First Amendment. It also asserts that it had been acquitted of criminal charges involving the same activities and that this acquittal should be given collateral estoppel effect. In view of our disposition of this appeal, we need not consider the merits of these contentions.

public welfare, this is not the test. Ever since Eve, mankind has recognized that one thing may lead to another and if the city . . . council chose to enact these restrictions as part of a program . . . to reduce the fraternizing by female employees with patrons of these liquor establishments, we must hold that this ordinance is a reasonable exercise of the police power and that the regulations are directly related to preserving morals and the public welfare." (See also *Farah* v. *Alcoholic Beverage etc. Appeals Board* (1958) 159 Cal.App.2d 335, 338 [324 P.2d 98]; *In re Kovalchuk* (1963) 202 Pa.Super. 389 [195 A.2d 828, 829]; "[V]ulgarity and violence . . . has a greater tendency to develop at a bar than at most other places.")

Similarly here, I would hold that the department's policy against the employment of topless waitresses constitutes a reasonable exercise of the discretion entrusted to it under both the California Constitution and statutes, and would reverse the judgments of the superior court.

McComb, J., concurred.

**McCOMB, J.**—I concur with Mr. Justice Burke's dissent, and would reverse the judgments for the reasons expressed by Mr. Justice Elkington in the dissenting opinion prepared by him for the Court of Appeal in *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (Cal.App.) 75 Cal.Rptr. 79, 101-106.