[No. D047218. Fourth Dist., Div. One. Apr. 21, 2006.]

ROBERT B. COFFIN et al., Petitioners, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent;
BARONA TRIBAL GAMING AUTHORITY et al., Real Parties in Interest.

## COUNSEL

Robert B. Coffin for Petitioners.

No appearance for Respondent.

William R. Winship, Jr., for Real Party in Interest Barona Tribal Gaming Authority.

Bill Lockyer, Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Chris A. Knudsen and Chris A. Brewster, Deputy Attorneys General, for Real Party in Interest Jerry Jolly, Director of Alcoholic Beverage Control.

## OPINION

**O'ROURKE, J.**—Review of a decision of the Alcoholic Beverage Control Appeals Board affirming a decision of the Department of Alcoholic Beverage Control to grant a liquor license to the Barona Tribal Gaming authority. Decision annulled and matter remanded.

This appeal addresses the following question: which party—the applicant or the protestant—bears the burden of proof during a hearing held by the

Department of Alcoholic Beverage Control (Department) regarding an applicant's petition for a liquor license. The Department, in a decision affirmed by the Alcoholic Beverage Control Appeals Board (Board), placed the burden on the protestants, and granted a liquor license to the Barona Tribal Gaming Authority over the protestants' objections. We disagree and hold that the applicant bears the burden of proof regarding the applicant's eligibility for a liquor license from the start of the application process until the Department makes a final determination. Accordingly, the Board's decision is annulled and the matter remanded.

## FACTUAL AND PROCEDURAL SUMMARY[1]

In September 2002, Barona applied for an on-sale general liquor license. In early 2004, the Department's investigator prepared a report that included the following findings: on the premises are a casino with two restaurants, a few fast food stands, a 397-room hotel with room service, two private gaming areas, a golf course, a pro shop and an event center for banquets and meetings. Alcoholic beverages will only be sold, served and consumed in the fine dining area, the two private gaming areas for private parties only, the hotel rooms via room service, the golf course and the event center.

The report stated, "The premises [are] located on a Federal Indian Reservation known as the Barona Ranch Indian Reservation in a rural area along a major thoroughfare, Wildcat Canyon Rd. The entrance from Wildcat Canyon Rd. is approximately 1500 feet from the casino area. The nearest structure to Wildcat Canyon Rd. is the event center approximately 600 feet.

"Wildcat Canyon Road is a winding two-lane undivided county road located east of Highway 67 and South of San Vicente Rd. in the west-central portion of San Diego County in the unincorporated community of Lakeside and includes lands within the Barona Indian Reservation. Wildcat Canyon Road is a major connection between the communities of Ramona and Lakeside stretching approximately 13 miles. The speed limit varies between 25 to 50 miles per hour.

"Hours of operation for the entire premises (licensed and unlicensed) will be 24 hours a day, every day of the week. . . . [¶] . . . [¶] . . . There are no consideration points within 600 feet of the premises. . . . [¶] There are no residences within 100 feet of the licensed premises or parking area."[2]

---

[1] The parties in this case proceeded under Business and Professions Code section 23950 et seq., which governs the issuance of liquor licenses and the conduct of protest hearings.

[2] The investigator, at the protest hearing, defined "consideration points" as "schools, parks, churches."

The report addressed the issues raised by the protestants, and noted that the San Diego County Sheriff's Department initially filed a protest, but withdrew it on June 2, 2003, after it held consultations with the California Highway Patrol. The investigator recommended issuance of a conditional license to Barona because it agreed to abide by 13 conditions that limited the times and places for the sale and consumption of alcohol on the premises. Barona incorporated the conditions in its petition for a conditional license filed on February 26, 2004. The Department granted Barona an interim license approximately three months prior to the protest hearing.

On May 11, 2004, the Department sent the protestants a "notice of hearing on protest" that stated, "The issues to be determined at said hearing are whether granting of such license(s) would be contrary to the public welfare and morals by reason of Article XX, Section 22 of the Constitution of the State of California, Section(s) 23958 of the Alcoholic Beverage Control Act of the Department of Alcoholic Beverage Control."

The Department's administrative law judge (ALJ) held protest hearings on June 15 and 16, 2004. From the outset, the ALJ placed the burden of proof on the protestants. The ALJ's statement of decision listed the protestants' various concerns: "(1) the premises are located in a residential area and the operation of the premises, if licensed, would interfere with the quiet enjoyment of the residential property by the residents, (2) issuance of the license would tend to create a law enforcement problem in the area, (3) issuance of the license would result in a traffic problem and/or lead to an increase in traffic accidents in the area, (4) issuance of the license would create a litter problem in the area and, (5) there is a school bus route near the premises."

According to the statement of decision, "Approximately seventy-three protests were filed in this matter and seventeen Protestants appeared at the hearing." It identified their "primary concern" as "the safety of Wildcat Canyon Road . . . The Protestants feel that the Road is hazardous due to the fact that it is a narrow road that has many sharp curves and they fear that issuance of the applied-for license will create a traffic problem and lead to an increase in accidents."

On July 2, 2004, the ALJ issued a proposed decision that granted Barona the applied-for license conditioned on Barona's submission of a signed petition that incorporated the 13 conditions mentioned *ante*, plus four others.[3]

On August 6, 2004, the Department adopted the ALJ's decision as its own. The protestants appealed to the Board, which affirmed.

We granted a writ of review filed by the protestants. The Attorney General has filed a brief on behalf of the Department.

## DISCUSSION

### I.

Barona concedes that, as the applicant, it bore the initial burden of proof regarding its eligibility for the license; however, it contends that because the Department granted it an interim license, the burden shifted to the protestants.

We have no need to review the Department's factual findings; rather, we review whether, based on the whole record, the Department proceeded in the manner required by law. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2005) 128 Cal.App.4th 1195, 1204–1205 [27 Cal.Rptr.3d 766]; Bus. & Prof. Code, § 23090.2.) "A different set of principles governs our review of administrative action to the extent that it consists of declarations or applications of legal rules or is the statement of the conclusions of law which are drawn from facts found in an adjudicatory proceeding." (*Boreta Enterprises Inc. v. Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 95 [84 Cal.Rptr. 113, 465 P.2d 1].) "More frequently, we have articulated this concept in terms of a scope of review which insures that the discretion vested in the Department over the licensing process will not be abused. The cases have phrased this standard in varying formulations but the basic idea, a judicially established limit to the admittedly broad power to the Department, has remained constant." (*Ibid.*)

---

[3] The additional conditions were as follows:

"1. The sale, service, and consumption of alcoholic beverages in the fine dining restaurant as depicted in the ABC-257 shall be allowed only from 5:00 p.m. until 10:00 p.m. on Sunday through Thursday and from 5:00 p.m. until 12 midnight on Friday and Saturday.

"2. The sale of alcoholic beverages in the hotel through room service shall be allowed only between the hours of 9:00 a.m. and 1:00 a.m.

"3. Alcoholic beverages at the service cart at the golf course shall be limited to two drinks per person per visit.

"4. The sale and service of alcoholic beverages at the special event center shall be allowed only from 9:00 a.m. until midnight on Sunday through Thursday and from 9:00 a.m. until 1:00 a.m. on Friday and Saturday."

■ "When we are determining the burden of proof under a statutory cause of action, the touchstone of our inquiry is, of course, the statute." (*Schaffer v. Weast* (2005) 546 U.S. 49 [163 L.Ed.2d 387, 126 S.Ct. 528, 534].) Here, the governing statutory scheme is the adjudication provisions of the Administrative Procedure Act. (Gov. Code, § 11400 et seq.) Specifically, Government Code section 11504 states, "A hearing to determine whether a right, authority, license, or privilege should be granted, issued, or renewed shall be initiated by filing a statement of issues. The statement of issues shall be a written statement specifying the statutes and rules with which *the respondent must show compliance by producing proof at the hearing* and, in addition, any particular matters that have come to the attention of the initiating party and that would authorize a denial of the agency action sought." (Italics added.) In turn, Government Code section 11500 defines the term "respondent" as "any person against whom an accusation is filed pursuant to [Gov. Code] Section 11503 or against whom a statement of issues is filed pursuant to [Gov. Code] Section 11504."

Barona was the respondent against whom a statement of issues was filed; therefore, it was required to bear the burden of proof at the hearing regarding the issues raised. However, the ALJ declined to enforce this requirement and instead ruled: "[I]n a protest matter, as far as I interpret the law, the burden of going forward with the evidence rests with the protestants to establish that the grounds set forth in the protest are true and constitute grounds for denial of the license."[4]

We reject the claim by Barona and the Department that the grant of a conditional license to Barona meant the burden shifted to the protestants because Barona had made a prima facie case it had good cause to obtain the license. Although at oral argument they purported to find support for this claim in Business and Professions Code section 24044.5, subdivision (b), they properly conceded the statute does not address burden of proof issues.[5] The express language of Government Code section 11504 must prevail over this baseless interpretation of Business and Professions Code section 24044.5, subdivision (b).

---

[4] The ALJ subsequently stated, "[I]f this were a petition case, if the Applicant were petitioning, for example, for a modification of a condition on the license, the Applicant definitely would have the burden of proof. . . . When someone files a protest and it's not a petition protest because if, in fact, the Department were recommending that the petition—that the license be denied, this would not be just a protest matter, it would be a petition and protest matter, and both the petitioner and the protestants would have the burden.

"In this particular case, since the Department is recommending that approval of the requested license, subject to the conditions indicated, the [burden of establishing the basis for the] protest clearly lies with the Protestants. And that is the law."

[5] The relevant portion of Business and Professions Code section 24015 states: "(a) If, after investigation, the department recommends that a license be issued, with or without conditions,

The ALJ's ruling does not comport with the state Supreme Court's ruling that "the burden of proof may properly be placed upon the applicant in application proceedings." (*Martin v. Alcoholic Bev. etc. Control Appeals Bd.* (1959) 52 Cal.2d 259, 265 [341 P.2d 291] (*Martin*).) In *Martin*, the Department denied a license to the applicant because he failed to report his previous arrests. The Board reversed the decision, but the court of appeal reinstated it. The Supreme Court affirmed the Court of Appeal and conclusively ruled, "the burden of proof was on the applicant." (*Id.* at p. 266.) Barona points out that *Martin* did not involve a protest action or mention protests. We do not read *Martin* to apply only in cases where no protest was filed. As we explain *post*, the presence or absence of a protest is not dispositive in allocating the burden of proof.

Barona, the Attorney General and the Board also attempt to distinguish *Martin* based on the Department's denial of the license in that case. We are not persuaded that this distinction is material because the *Martin* court nowhere expressly decided the case based on the Department's denial of the applicant's petition. The applicant bears the burden of proof at all times until the Department makes a final determination.

■ The conditional license was issued for an initial 120 days, and renewable thereafter for additional 120-day periods as necessary. (Bus. & Prof. Code, §§ 23804, 24044.5.) The interim permit is automatically cancelled when a final determination made by the Department regarding the protest becomes effective or when the application for the retail license is withdrawn, whichever comes first. (Bus. & Prof. Code, § 24044.5, subd. (b).) ■ Barona's interim license always was subject to summary cancellation or suspension if the Department determined good cause existed. (Accord, *Yu v. Alcoholic Bev. etc. Appeals Bd.* (1992) 3 Cal.App.4th 286, 297 [4 Cal.Rptr.2d 280] ["Liquor licensing is unique. While a license to practice a trade is generally considered a vested property right, a license to sell liquor is a privilege that can be granted or withheld by the state"].)

The ALJ's ruling also is inconsistent with a 1954 opinion by the California Attorney General that supports our conclusion. The opinion addressed the question of upon whom does the burden of proof rest, and upon whom is the burden of going forward with the evidence in a variety of situations,

notwithstanding that one or more protests have been accepted by the department, the department shall notify the applicant and all protesting parties whose protests have been accepted in writing of its determination.

"(b) Any person who has filed a verified protest in a timely fashion pursuant to subdivision (a) of section 24013, that has been accepted pursuant to this article may request that the department conduct a hearing on the issue or issues raised in the protest. The request shall be in writing and shall be filed with the department within 15 business days of the date the department notifies the protesting party of its determination as required under subdivision (a)."

including, "Where a citizen has filed a protest to the granting of a license and the proceeding is adversary as between protest and applicant." The opinion answered, "In all of the enumerated instances, the primary burden of proof is upon the applicant for a license." (23 Ops.Cal.Atty.Gen. 290, 291 (1954).)

The opinion, which expressly disagrees with the position advocated by Barona and the Attorney General in this appeal, states: "[I]t has been suggested that, where a protest is filed, the subsequent proceedings are 'adversary between the applicant and protestant.' Such is not, in our opinion, a correct analysis of the statutory scheme. When a protest is made to the issuance of a liquor license, the qualification[] of the applicant (or his proposed premises) is challenged. But it is the Board, not the citizen, who is charged with the obligation to file a statement of issues (Gov. Code Sec. 11504), and the protestant has no further rights in the cause—except to be heard. Thus, the protestant is, in our opinion, but analogous to a 'complainant' in a criminal proceeding, or the 'complaining witness,' not a real party in interest to the administrative proceeding. The failure of the protestant to prove, by a preponderance of the evidence, the validity of his objections to the issuance of the license in controversy, is no aid to the applicant in the establishing of his right to the license." (23 Ops.Cal.Atty.Gen., *supra,* at p. 294.)

Both the Attorney General and Barona misapply the above quoted language and declare, "[The 1954 opinion] did not address, mention or refer to hearings on protests to the Department's issuance of a liquor license." In fact, the 1954 opinion elaborated on the topic of protest hearings as follows, "the burden of proof, in the primary sense, is always upon the party applying for a license. Accordingly, we perceive no difference between the two types of procedure above referred to, i.e., a hearing on a petition for license or a hearing occasioned by a *protest.* . . . [¶] We therefore conclude that, regardless of whether the hearing before the hearing officer is (1) on a petition of an applicant for a license . . . or (2) after the filing of a *protest* by a citizen, the burden of proof, in the primary sense, is upon, and remains with, the applicant." (23 Ops. Cal.Atty.Gen., *supra,* at pp. 293–294, original italics omitted, second italics added.)

■ "Opinions of the Attorney General, while not binding, are entitled to great weight. [Citations.] In the absence of controlling authority, these opinions are persuasive." (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2].) We are persuaded that this particular opinion correctly applies Government Code section 11504 and is consistent with the *Martin* case; accordingly we adopt its conclusion.

At oral argument, Barona and the Department, for the first time, contended that the opinion is no longer applicable because it relied on a statutory

framework that has been repealed; specifically, now the Department has replaced the Board of Equalization as the issuer of liquor licenses. (See Bus. & Prof. Code, § 24010 et seq.) However, as counsel for the protesters pointed out, Government Code section 11504 is dispositive of the issue of the burden of proof; it was cited in the opinion, and has not been amended in any substantive manner in more than 50 years.

## II.

We disagree with the rationale the Board gave for its decision to place the burden of proof on the protestants, which we quote in detail:

"Had the protestants appeared at the hearing but presented no evidence whatsoever, the ALJ would have had no alternative but to recommend to the Department that the license issue. It was not incumbent on the applicant to persuade the Department to adhere to its original decision. It seems to us that it makes much more sense for the burden to be on the protestant to prove the essential elements of his or her claim.

"If protestants were correct in their contention, it would mean that every decision by the Department to grant a license would have to be reaffirmed in a formal hearing where *a protestant could merely object to its issuance and, solely on the basis of an unsupported objection,* put the Department and the applicant to the task of justifying a decision the Department properly made in the exercise of its administrative discretion. In other words, the Department would be required to prove it did not abuse its discretion *simply because a protestant, without any evidentiary basis,* claimed it had." (Italics added.)

To the extent the Board implied that it is objectionable to place the burden on applicants because (1) applicants will be disadvantaged; (2) numerous protests will be unfounded; or, (3) the Department's caseload will increase, these objections are easily rebutted. We rely principally on the Department's own "Instructions for Preparing and Filing Protests Against Applications for Alcoholic Beverage Licenses."[6]

---

[6] We take judicial notice of the Department's instructions on our own motion. (Evid. Code, §§ 452, 459.) The instructions state:

"The protest must set forth the particular ground of objection and also specify the facts which support these objections. . . . Additionally the protestant must sign a declaration, under penalty of perjury, certifying that the statements contained in the protest are true. . . . [¶] . . . The California Constitution provides that the selling, purchasing, and consumption of alcoholic beverages in licensed premises is legal in California; therefore, a license cannot be denied merely because of a protestant's personal feelings against the use of alcoholic beverages.

"Under the California Alcoholic Beverage Control Act, a hearing must be held on a valid protest so as to afford the applicant the right to meet the objections with whatever appropriate evidence he or she may have available. This means that the mere submission by you of a

First, applicants are given sufficient opportunity to prepare and defend against the protests because the Department provides applicants with a statement of issues to be addressed at the hearing. Also, each protestant's statements must be shared with the applicant in advance. There are several discovery rights available to applicants. These include access to the names and addresses of witnesses, and the right to inspect and copy statements of witnesses, writings and reports proposed to be admitted into evidence, any writing or thing which is relevant and which would be admissible into evidence, and investigative reports made by or on behalf of the agency or other party pertaining to the subject matter of the proceeding. (Gov. Code, § 11507.6.) Finally, the notice of the hearing incorporates language from Government Code section 11509 and informs the parties, "you may present any relevant evidence, and will be given full opportunity to cross-examine all witnesses testifying against you. You are entitled to the issuance of subpoenas to compel the attendance of witnesses and the production of books, documents or other things."

Second, the instructions require the protestants to present factual and legal bases for their protests. Indeed, here, the Department's legal analyst informed each protestant by letter that, "Generally, the only protests the Department may reject are those which lack legal grounds or are false, vexatious, or without reasonable or probable cause." Third, it follows that the Department likely will not be burdened by additional protest hearings given the above mentioned safeguards against specious protests.

In light of our conclusion that the Department erred in placing the burden of proof on the third party protestants instead of on the applicant, we will not address the protestants' other contention that insufficient evidence supported the Department's decision. Also, we do not scrutinize the Department's factual findings or reweigh the evidence in light of our holding, but instead remand the matter to the Department. (*Covert v. State Board of Equalization* (1946) 29 Cal.2d 125, 131 [173 P.2d 545].)

---

protest against issuance of a particular license does not complete the matter. It will be necessary for you to attend the hearing to present testimony and/or evidence to substantiate your protest.

"A COPY OF YOUR PROTEST WILL BE GIVEN TO THE APPLICANT.

"This is done because the law requires that the applicant be furnished with a statement of issues to be determined at the hearing. The statement of issues identifies the grounds that you and any other possible protestants have submitted which form the basis of your objection to the granting of the license." (18 pt. 3 Cal. Forms of Pleading and Practice (Matthew Bender May 2000) 18, Alcoholic Beverage Licenses, § 18.50[1], p. 68.1.)

## DISPOSITION

The decision of the Board is annulled and the matter is remanded to the Department for further proceedings consistent with this opinion.

McDonald, Acting P. J., and Irion, J., concurred.